UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOIS LAMA-WOLOBAH, as Personal Representative of the Estate of HARRIS WOLOBAH,<br>           Plaintiff,<br><br>v.<br><br>PAQUI, LLC, AMPLIFY SNACK BRANDS, INC., THE HERSHEY COMPANY, WALGREEN EASTERN CO., INC. D/B/A Walgreen #03151, WALGREENS OF MASSACHUSETTS, LLC, JAMES CONNOLLY, and JANE DOE,<br>           Defendants. | Civil No. 4:24-cv-12016-MRG |

**ORDER ON PLAINTIFF'S MOTION TO REMAND [ECF. NO. 37]**

**GUZMAN, J.**

Plaintiff Lois Lama Wolobah is the surviving mother of Harris Wolobah ("Wolobah") and brings suit against Defendants, whom Plaintiff claims are liable for her son's wrongful death. Before the Court is the Plaintiff's Motion to Remand. [ECF No. 37]. The Court heard argument on the motion at a hearing on June 18, 2025. [ECF No. 49]. For the reasons stated on the record at the hearing and expounded below, the motion is **DENIED**, and Defendants James Connolly and Jane Doe are **DISMISSED** from this action.

1

I. BACKGROUND

Defendants The Hershey Company ("Hershey"), Amplify Snack Brands Inc. ("Amplify"), and Pacqui, LLC ("Pacqui") manufacture, distribute, market, and sell the "One Chip Challenge" chip, a tortilla chip seasoned with some of the spiciest peppers in the world. [ECF No. 1-1 ¶¶ 40–47]. In 2023, the chip was the subject of a "viral" social media trend called the "One-Chip Challenge," in which participants filmed themselves consuming the exceedingly spicy chip and attempted to resist consuming any beverage or food after consumption that might offset the body's natural response to eating a hot pepper chip. [Id. ¶¶ 59–60].

Plaintiff alleges that on or about August 31, 2023, a fourteen-year-old child and friend of Harris Wolobah purchased one or more "One-Chip Challenge" chips at a Walgreens store located at 320 Park Avenue, Worcester, MA. [Id. ¶ 14]. The child then went to school on September 1, 2023, and shared the chip with other students, including Wolobah, to participate in the TikTok-viral "One-Chip challenge" ("OCC"). [Id. ¶¶ 23-25]. Wolobah ingested the chip and became ill shortly afterward, losing consciousness. [Id. ¶¶ 26-27]. After seeking aid at the nurses' office, Wolobah was then brought home by his family, where later that evening he lost consciousness again and suffered respiratory distress. [Id. ¶¶ 32-37]. Wolobah died at the hospital that same evening from cardiopulmonary arrest. [Id. ¶¶ 38-39].

Plaintiff initially brought suit in Suffolk Superior Civil Court on July 11, 2024, against Defendants, Paqui, Amplify, Hershey, Walgreens Eastern Co., Inc, Walgreens of Massachusetts, LLC, and James Connolly and Jane Doe individually. [ECF No. 34]. Plaintiff brings several claims, including Negligence, Negligent Failure to Warn, Gross Negligence, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose.

[ECF No. 1-1]. She seeks compensatory damages including loss of consortium, medical expenses, and funeral expenses, as well as punitive damages. [Id. ¶¶ 92-98, 131].

On August 5, 2024, Defendants filed a Notice of Removal. [ECF No. 1]. The Plaintiff then filed a Motion to Remand which is presently before this Court. [ECF No. 37]. In their opposition to remand, the Defendants assert that Plaintiff fraudulently joined James Connolly and Jane Doe, who are residents of Massachusetts, for the purpose of defeating diversity jurisdiction. [ECF No. 1-1 ¶¶ 2-6].

II. LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, and, as such, the Court has "a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). As set forth in 28 U.S.C. § 1332(a)(1), diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." "This statutory grant requires complete diversity between the plaintiffs and defendants in an action." Picciotto v. Continental Cas. Co., 512 F.3d 9, 17 (1st Cir. 2008) (emphasis omitted) (citing Strawbridge v. Curtiss, 7 U.S. 267 (1806)); Halleran v. Hoffman, 966 F.2d 45, 47 (1st Cir. 1992).

A. Amount in Controversy

Under 28 U.S.C. §1446(c)(2), the amount in controversy is the amount claimed in the plaintiff's initial complaint. The burden is on the plaintiff to "establish that the minimum amount in controversy has been met." CE Design, Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (citing Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012)). However, on removal, defendant has the burden of establishing federal jurisdiction. In re Pharm. Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 116 (D. Mass. 2006). If a complaint "demands

3

monetary relief of a stated sum, that sum . . . is 'deemed to be the amount in controversy.'" Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 84 (2014). "If that sum exceeds $75,000, then the court assumes that the amount-in-controversy requirement is satisfied unless it is shown to a 'legal certainty' that amount cannot be recovered." Irabor v. Lufthansa Airlines, 427 F. Supp. 3d 222, 228–29 (D. Mass. 2019) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

Here, the Complaint itself does not allege a specific amount in controversy. However, the civil cover sheet to the original Complaint specifies damages of $350,030,000.00 for Plaintiff's wrongful death-related claims. [ECF No. 34 at 66]. "[C]ivil cover sheets are inherently imprecise, and the extent of a civil cover sheet's role in determining the amount in controversy is not settled in this Circuit." Toro v. CSX Intermodal Terminals, Inc., 199 F. Supp. 3d 320, 324 (D. Mass. 2016); see also Williams v. Toys "R" Us — Del., Inc., No. 15-13943-MLW, 2016 U.S. Dist. LEXIS 134905, at *3 (D. Mass. Sep. 28, 2016) ("[A] civil cover sheet may provide evidence of the amount in controversy [but] is not in itself dispositive.") (internal quotations omitted). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee, 574 U.S. at 89.

Given the high probability that Plaintiff, if she succeeds in her action, could recover an excess of $75,000 related to her wrongful death claims, and the submission of $350,030,00.00 in the initial filing, the Court will assume that Defendants have met their burden of proving the amount in controversy.

B. Removal due to Fraudulent Joinder

A defendant desiring to remove any civil action from state court to federal court must have consent of all named defendants. 28 U.S.C. §1446. In the First Circuit, if a Plaintiff fraudulently

4

joins a party to a matter to thwart removal, it is not necessary for the defendants in the action to obtain the consent of the fraudulently joined party for removal. Int'l Union of Operating Eng'rs, Local No. 68 Welfare Fund v. AstraZeneca PLC, 431 F. Supp. 2d 109, 117 (D. Mass. 2006). If a defendant can successfully prove fraudulent joinder, unanimous consent among the defendants is not required and the federal court "may ignore a lack of consent for removal from a fraudulently joined defendant and permit the removal of the case." In re Neurotonin Mktg., No. 04-10981, 2006 U.S. Dist. LEXIS 98614, at *51 n. 2 (D. Mass. Dec. 12, 2006). Here, the Defendants Paqui, Hershey, Amplify, Walgreen Eastern, and Walgreens Massachusetts, LLC, consented to removal. [ECF No. 1 ¶¶ 43-45]. Defendants did not receive consent from James Connolly or Jane Doe, Massachusetts residents and non-diverse defendants, prior to filing the service for removal. [Id. ¶¶ 46-47].

Under fraudulent joinder, "removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014). In other words, the Court must apply the substantive standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in evaluating Plaintiff's claims against the non-diverse defendant. Bay Equity LLC v. Total Mortg. Servs., LLC, No. 1:20-cv-10693-IT, 2020 U.S. Dist. LEXIS 234963, at *7 (D. Mass. Dec. 15, 2020) (citing In re Fresenius GranuFlo/NaturaLyte Dialysate Prods. Liab. Litig., 76 F. Supp. 3d 321, 333 (D. Mass. 2015)). "Defendants, as the party seeking removal, bear the burden of demonstrating by clear and convincing evidence 'either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse

defendant in state court." In re Fresenius 76 F. Supp. at 332–33 (emphasis omitted) (citing Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2001)). "[I]n assessing a claim of fraudulent joinder, a court is not bound by the allegations in the complaint and may consider affidavits and other materials that bear on the question of whether there is a reasonable basis for the joinder of a defendant." Bay Equity LLC v. Total Mortg. Servs., LLC, 2020 U.S. Dist. LEXIS 234963, *7-8 (D. Mass. Dec. 15, 2020) (quoting In re Fresenius, 76 F. Supp. at 333 (D. Mass. 2015)).

III. DISCUSSION

At issue for purposes of remand are three Defendants: Walgreens of Massachusetts LLC, James Connolly, and Jane Doe. It is uncontested that Plaintiff is a citizen of Massachusetts and that Defendants Paqui, Amplify, Hershey, and Walgreens Eastern are all out-of-state entities. [ECF No. 1-1 ¶¶ 2-6, 12].

Defendants acknowledge that Connolly and Doe are Massachusetts residents and that this would ordinarily thwart removal, but they contend that the Court may disregard Connolly and Doe's citizenship because they were fraudulently joined to destroy diversity jurisdiction. [ECF No. 1 ¶ 3]. As discussed below, the Court finds that Walgreens of Massachusetts, LLC is not a citizen of Massachusetts, but a New York and Illinois entity, and James Connolly and Jane Doe must be dismissed from this action because Plaintiff has not asserted a plausible claim to relief.

A. Walgreens of Massachusetts LLC.

For the purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all of its members. BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 696 (1st Cir. 2023). A corporation's citizenship, for diversity jurisdiction purposes, is both the state where it is incorporated and the state "where it has its principal place of business."

28 U.S.C. § 1332 (c)(1). Plaintiff conceded during the hearing on June 18, 2025, that Walgreens of Massachusetts, LLC, has a single member, Walgreen Eastern Co., which is incorporated in New York and has its principal place of business in Illinois. [ECF No. 49]. There are no members within the LLC that are residents of Massachusetts which would satisfy the citizenship purpose of diversity. [Id.].

Therefore, there is diversity between the Plaintiff and Walgreens of Massachusetts, LLC.

   B.  James Connolly and Jane Doe

"Citizenship [for an individual] is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely." Hall v. Curran, 599 F. 3d 70, 72 (1st Cir. 2010). It is undisputed that James Connolly and Jane Doe are domiciled in Massachusetts, and that they are non-diverse defendants from the Plaintiff. [ECF No. 1-1 ¶¶ 8–9]. As stated above, Defendants assert that Plaintiff improperly joined Connolly and Doe to defeat diversity jurisdictions. [ECF No. 1 ¶ 3]. Accordingly, the Court applies the 12(b)(6) standard to evaluate whether Plaintiff could state a claim against Connolly and Doe in state court. See In re Fresenius, 76 F. Supp. at 332–33 (citing Mills, 178 F. Supp. 2d at 5).

Plaintiff alleges that James Connolly was the manager of the Walgreens store where the minor child purchased the OCC chips at issue. [ECF No. 1-1 ¶ 20]. Jane Doe is the unknown store clerk who may have sold the OCC bag to the fourteen-year-old who then gave the chip to Wolobah. [Id. ¶ 21]. Plaintiff asserts negligence theories against the store clerk and Connolly. Under Massachusetts law, there are "four elements to a negligence claim: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; (3) causation; and (4) actual loss by the plaintiff." Delaney v. Reynolds, 825 N.E. 2d 554, 556 (Mass. App. Ct. 2005). Duty is a necessary element for a negligence analysis. Negligence is not actionable unless it involves "the

7

invasion of a legally protected interest, the violation of a right." Palsgraf v. Long Island R. Co., 162 N.E. 99, 99 (N.Y. App. Ct. 1928).

Plaintiff alleges that Connolly and Doe were under a legal duty to protect Wolobah from harm by limiting the access of the OCC chip to another minor. [ECF No. 1-1 ¶¶ 20-22, 50–53, 58]. Plaintiff asserts that these employees had an obligation to confirm the identification and age of the minor that bought the chip and restrict his access. [ECF No.1-1¶¶ 327–31, 337–41, 346-51, 356–60]. Plaintiff argues that Connolly and Doe knew or should have known that the chip was dangerous, and that it was foreseeable that the minor would then share the OCC chip with other minors, leading to their physical harm, and, therefore, any duty the Defendants had to the unnamed minor extended to Wolobah. [Id.]

Plaintiff and Defendants each rely on Killeen v. Harmon Grain Products, Inc., 413 N.E.2d 767 (Mass. App. Ct. 1980), a case involving the sale of a flavored toothpick to a ten-year-old child, as an example of retailer negligence regarding a sale of a lawful good to a minor. [ECF No. 38 at 14; ECF No. 1-1 ¶ 24]. Killeen cites the Restatement (Second) of Torts, stating "[o]ne who supplies . . . a chattel for the use of another whom the supplier knows . . . to be likely because of his youth . . . to use it in a manner involving unreasonable risk of physical harm to himself . . . is subject to liability for physical harm resulting to [him]." 413 N.E.2d at 771. While acknowledging that some lawful but dangerous goods such as "needles, knives, scissors or blades" may require precautions beyond what is reasonably expected of a child, the court noted that a ten-year-old consumer is of an age that borders having full responsibility for their purchase. Id. Moreover, the court acknowledged that, at some point, as a matter of law, the retailer is justified to assume that "his customer shoulders full responsibility for the proper use of the product." Id. at 772.

The OCC chip is not a product that would reasonably fall within the boundary set in Killeen, where a finding of negligence against a retailer may be established if the product is one "parents and other adults commonly not only warn children of the dangers in playing with . . . but seek to deprive young children of ready access to" (e.g., needles, knives, scissors, blades, glassware, or toothpicks). 413 N.E.2d at 772. Plaintiff alleges the individual who purchased the product in this case was a high school student. [ECF No. 1-1 ¶¶ 13, 14, 23]. It is justified that a retailer would assume that a high school student would "shoulder full responsibility for the proper use," of a product such as a bag of potato chips. Id.

Plaintiff asserts that the Defendants had an obligation to limit the minor purchaser's access to the chip, and that their failure to do so should result in third-party liability analogous to Dram Shop cases. [ECF No. 41 at 3]; see e.g., Cimino v. Milford Keg, Inc., 431 N.E. 2d 920, 926 (Mass. 1982) (tavern keeper liable to the Estate of a nine-year old child struck and killed by a drunk driver overserved at a tavern); Adamian v. Three Sons, Inc., 233 N.E. 2d 18, 20 (Mass. 1968) (declaring, as a matter of common law, "[h]enceforth in this Commonwealth waste of human life due to drunken driving on the highways will not be left outside the scope of foreseeable risk created by the sale of liquor to an already intoxicated individual); Michnik-Zilberman v. Gordon's Liquor, Inc., 453 N.E. 2d 430, 431-32 (Mass. 1983) (liquor store liable for selling beer to a minor who then drove intoxicated and struck and killed a bicyclist). Plaintiff also asserts that the present case is analogous to third-party liability negligence actions related to gun possession. [ECF No. 41 at 3]; see e.g., Jupin v. Kask, 849 N.E. 2d 829, 837 (Mass. 2006) (homeowner liable where police officer shot and killed by young man who accessed gun kept at homeowner's property). This case is not analogous to those examples. The key difference between these third-party liability cases and the duty that Plaintiff wants to assert here, is that those cases revolved around highly regulated

9

products, (e.g., alcohol and guns), whereas this case is focused on a non-restricted retail food product, i.e. a bag of very spicy tortilla chips.

Although the packaging of the chip includes a label stating, "Intended for adult consumption," [ECF No. 1-1 ¶ 50], there are no legal restrictions on a consumer's ability to buy the product in store. In August 2023, when the purchase was made, the Massachusetts legislature had not created limiting regulations on possession of the chips at issue via identification or age requirements. Even as of June 2025, after the events in this case, the state legislature has not enacted any further regulations.

Imposing individual liability on employees of a retailer who may or may not have been present at the transaction of a legal, generally accessible food product, would improperly expand the scope of a general duty of care between merchants and consumers. Plaintiff therefore fails to establish the necessary prong of "duty" for her negligence claims against Connolly and Doe. As the Complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," dismissal of Plaintiff's claims against Connolly and Doe is appropriate. Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). While *sua sponte* dismissals "should be dispensed sparingly" and the plaintiff generally should be afforded notice and an opportunity to amend the complaint, here, "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile" and dismissal is appropriate. See Garayalde-Rijos v. Mun. Carolina, 747 F.3d 15, 22-23 (1st Cir. 2014) (citations and internal quotation marks omitted).

IV. <u>CONCLUSION</u>

Defendants Connolly and Doe are dismissed from this action. The Court finds that Defendants have successfully proven fraudulent joinder and will therefore ignore the Defendants' failure to obtain consent from Connolly and Doe prior to filing the notice of removal. Accordingly, removal was proper. The Court further finds that the remaining parties to this action are sufficiently diverse and that the Defendants have met their burden for proving the amount in controversy. Consequently, the Court retains jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and **<u>DENIES</u>** Plaintiff's Motion to Remand [ECF No. 37].

SO ORDERED.

Date: June 30, 2025

      /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge